IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
UNITED STATES              )
                           )
     v.                    )    CRIMINAL ACTION NO.
                           )       2:05cr19-MHT
ARTEMIS JAMAL TERRY        )          (WO)
```

OPINION

This  criminal  case  presents  a  matter  of  first

impression in the Eleventh Circuit regarding § 2K2.1 of

the United States Sentencing Guidelines.  The court must

decide  whether  enhancing  a  gun-possession  sentence  for

possessing   a   gun   in   connection   with   a   burglary

constitutes  impermissible  double  counting  when  the  gun

was  obtained  during  the  burglary.   In  deciding  this

question, the court must necessarily interpret U.S.S.G.

§  2K2.1(b)(5),  an  obtuse  provision  of  the  Sentencing

Guidelines which other circuit courts have construed to

have three different meanings.

## I. BACKGROUND

Defendant Artemis Jamal Terry, who had previously been convicted in state court of possessing a controlled substance with intent to distribute, pled guilty to being a felon in possession of firearm in violation of 18 U.S.C. § 922(g)(1).  The conduct underlying the charge involved breaking into a house and stealing a shotgun from that house, which conduct also constitutes burglary under state law.  When police interrupted the burglary, Terry pointed the gun at a police officer and later, while fleeing, also pointed it at a neighbor.  He was charged and convicted in state court of the misdemeanor of reckless endangerment for pointing the gun at the neighbor.

Before sentencing in this court for the federal felon-in-possession charge, the Probation Department prepared a presentence investigation report (PSR), which recommended a sentencing range of 100 to 120 months. Terry's base offense level was 20, pursuant to U.S.S.G.

2

§ 2K2.1(a)(4)(A), and Probation recommended three enhancements that are relevant here.  First, Probation applied a two-level enhancement pursuant to subsection (b)(4) of U.S.S.G. § 2K2.1, which applies if the gun in question was stolen; the gun giving rise to the instant offense was the shotgun, which, it is undisputed, was stolen in the course of the burglary.  Probation also applied a four-level enhancement pursuant to subsection (b)(5) of § 2K2.1, which applies if the defendant used or possessed any firearm in connection with another felony offense;  Probation's rationale for applying this enhancement was that Terry possessed the shotgun during the course of the burglary.[1]  Finally, Probation applied a two-level enhancement pursuant to U.S.S.G. § 3C1.2, which applies if the defendant recklessly endangered

---

1.    The acts of reckless endangerment do not qualify as "another felony offense" under subsection (b)(5) because a "felony offense" is any crime punishable by a prison term exceeding one year, see U.S.S.G. § 2K2.1 cmt n.3.   Reckless endangerment is a Class A misdemeanor under Alabama law, 1975 Ala. Code § 13A-6-24(b), which is punishable by no more than one year imprisonment, 1975 Ala. Code § 13A-5-7(a)(1).

another person while fleeing from a law-enforcement officer.  Probation based this enhancement on the fact that Terry pointed the gun at the officer and the neighbor during the burglary.

The third of Terry's six objections to the PSR questioned the imposition of the subsection (b)(5) enhancement in these circumstances.  Noting a circuit split on this issue, the court ordered supplemental briefing.  A sentencing hearing was held on December 14, 2005, at which the court heard oral argument on Terry's third objection to the PSR.  The court now addresses that objection.


II. DISCUSSION

Section 2K2.1 of the Guidelines covers "unlawful receipt, possession, or transportation of firearms" and "prohibited transactions involving firearms." Subsection (b)(5) provides for a four-point enhancement on the base-level offense if "the defendant used or possessed any

4

firearm ... in connection with another felony offense."
The question here is two-fold: first, whether a burglary
during which the prohibited firearm is stolen is "another
felony offense;" and, second, whether mere possession of
the stolen weapon after it has been stolen is "in
connection with" the underlying burglary.

The Eleventh Circuit Court of Appeals has yet to
address either question, and a three-way split has
developed among those circuits that have.  The Third,
Sixth, and Seventh Circuits generally do not allow the
enhancement for mere possession of the firearm because
they do not consider the burglary to be a distinct
("another") offense from the base-level gun offense.  The
Fifth and Eighth Circuits always allow the enhancement
because they consider the burglary to be distinct and
mere possession satisfies their interpretation of "in
connection with."  The Fourth Circuit considers the
burglary to be distinct because the gun crime and the
burglary have distinct elements; nonetheless, under its

5

interpretation of "in connection with," something more than mere possession of the stolen weapon is necessary for the enhancement to apply.[2]

Although the circuit courts have all framed the issue differently, the ultimate question in every case is whether applying the enhancement constitutes impermissible double counting. In the Eleventh Circuit, double counting a factor during sentencing is "permitted if the Sentencing Commission (Commission) intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing." United States v. Jackson, 276 F.3d 1231, 1235 (11th Cir. 2001) (internal quotations omitted). The double-counting inquiry therefore requires the court to answer two

---

2. Contrary to the government's assertion, the Second Circuit has not decided this question. In United States v. Shephardson, 196 F.3d 306 (2d Cir. 1999), the defendants, who were convicted felons, stole guns from hunting camps and then sold them for drugs. The circuit court expressly declined to decide if the burglary constituted "another felony offense" because the exchange of the guns for drugs was clearly "another felony offense." Id. at 314-16.

questions: (1) whether the Commission intend both provisions to apply to the same conduct, and (2) whether the two provisions address distinct notions or aspects of the criminal conduct that independently warrant punishment.

The court will address the second prong of the double-counting test first because it is more straightforward. Terry pled guilty to possessing a firearm after having been convicted of a felony, a violation of 18 U.S.C. § 922(g)(1). His base-offense level was therefore calculated pursuant to U.S.S.G. § 2K2.1(a)(4)(A), which is intended to punish illegal possession of a firearm. In contrast, the subsection (b)(5) enhancement ensures "that a defendant receives more severe punishment if, in addition to committing a firearms offense within the scope of § 2K2.1, he commits a separate felony offense that is rendered more dangerous by the presence of the firearm." United States v. Blount, 337 F.3d 404, 406 (4th Cir. 2003). These

7

provisions clearly punish different aspects of the same conduct:  The base-level offense punishes the fact that Terry, whom society has determined should not possess a firearm, possessed a firearm, while subsection (b)(5) would punish the additional threat to society because Terry possessed a gun during the course of a another crime.[3]

The first prong, whether the Commission intended the provisions to apply to the same conduct, unfortunately is not as straightforward.  In the Eleventh Circuit, courts presume "that the Commission intended to apply separate guideline provisions cumulatively unless specifically directed otherwise."  Jackson, 276 F.3d at 1236. Nonetheless, the text of the Guideline provision must actually support the application of the enhancement to

---

3. Terry also received an enhancement under subsection (b)(4) for possessing a gun that was stolen. This enhancement is also distinct because it contemplates the additional harm to society when a person possesses a gun that was or is stolen.  Moreover, it is clear from the text of the provision and the commentary that the Commission intended it to apply

the instant conduct before a court can apply an enhancement cumulatively; put another way, although the Eleventh Circuit presumes enhancements apply cumulatively, it does not presume that enhancements apply.

This prong, therefore, involves two steps, first construing the provision to determine if the enhancement applies to the instant conduct and then determining if the Commission specifically directed that the provisions should not apply cumulatively.[4]   Because there is no

---

4.   The courts that have applied the subsection (b)(5) enhancement have used the second question to buttress their conclusion on the first, but such an argument is logically flawed.   They correctly note that the Guidelines explicitly prohibit the cumulative application of (b)(4) in some circumstances, but do not explicitly prohibit the cumulative application of (b)(5). They maintain that the silence on the cumulative application of (b)(5) indicates that the Commission intended (b)(5) to apply cumulatively, which means that the Commission intended the enhancement to apply in these circumstances.   See United States v. Kenney, 283 F.3d 934, 937 (8th Cir. 2002).

However, the Commission's silence on the cumulative application of subsection (b)(5) is irrelevant to whether the subsection (b)(5) enhancement applies to this
(continued...)

question that the Guidelines do not specifically prohibit cumulative application of subsection (b)(5), the inquiry turns on whether subsection (b)(5) applies when the other felony in question is the act by which the firearm was possessed or stolen, or, put more simply, what "another felony offense" means.

The courts that have construed this term have developed three competing interpretations.  The majority view, held by the Third, Sixth, and Seventh Circuits, construes "another felony offense" to mean <u>conduct</u> distinct from the <u>conduct</u> giving rise to the charged offense.  <u>United States v. Fenton</u>, 309 F.3d 825, 828 (3d Cir. 2002); <u>United States v. Szakacs</u>, 212 F.3d 344, 351 (7th Cir. 1999); <u>United States v. Sanders</u>, 162 F.3d 396, 402 (6th Cir. 1998).  This interpretation rests primarily on the Guideline's definition of "offense," which is "the offense of conviction plus all relevant conduct.

_____

    4.  (...continued)
conduct.  Simply put, the Commission had no need to address the cumulative application if the enhancement does not apply to the instant conduct.

U.S.S.G. § 1B1.1 cmt n.1(H).[5]  Because the defendant could

─────────────────

     5.  A second argument suggests that crimes with the
same harm and victim are supposed to be grouped under
U.S.S.G. § 3D1.2, and that the gun possession would have
been grouped with the burglary had they both been charged
in federal court, resulting in a lower sentence than the
enhanced gun possession offense carries by itself.
Szakacs, 212 F.3d at 351 n.2.  When crimes are grouped,
however, the enhancements based on relevant conduct are
included in each crime and the highest offense level of
the group is used.  Thus, the defendant is not being
punished more harshly because he was not charged with the
burglary in federal court.  Blount, 337 F.3d 408-09.

     Another argument relies on Application Note 15 of
§ 2K2.1, which states that "another felony offense" does
not include "firearms possession or trafficking
offenses."  The courts suggest that the burglary is, in
effect, a firearms possession offense, as that term is
generally used in Note 15, because a firearm was stolen.
Szakacs, 212 F.3d at 350.  The more natural reading of
"firearms possession" offense, however, is a crime that
necessarily requires possession of a firearm, while
burglary can involve theft of anything.

     A final argument, which is voiced differently by each
court, is that courts should not apply a four-level
enhancement without clear indication that the Commission
intended for it to apply.  See Fenton, 309 F.3d at 828.
Although the Seventh and Third Circuits disavow relying
on the rule of lenity in reaching their conclusions, this
argument is but another formulation of that rule.  It
would be premature to apply the rule of lenity before
comparing the reasonableness of the competing
interpretations.

not have possessed the gun without committing the burglary, the burglary is part of the relevant conduct of the base-level gun offense.   See United States v. McDonald, 165 F.3d 1032, 1037 (8th Cir. 1999).

These courts conclude that treating the burglary, which is 'part' of the base-level offense and which actually generated the gun possession, as "another felony offense" would denude the word "another" of any meaning within the provision, because "another" implies a distinct or different felony offense. Sanders, 162 F.3d at 400.  Absent some additional conduct beyond the act of acquiring the firearm supporting the federal firearms conviction, these courts do not allow the subsection (b)(5) enhancement.  Szakacs, 212 F.3d at 351.  Thus, the enhancement would apply only if the defendant used the stolen gun later to effect an escape or used it in a subsequent robbery, that is, something outside the "relevant conduct" for the underlying gun offense.  See McDonald, 165 F.3d at 1037; Sanders, 162 F.3d at 399-400.

Nonetheless, the Fifth and Eighth Circuits maintain that this is not a reasonable interpretation of "another felony offense," and maintain that the meaning of "another felony offense" turns on whether the instant conduct could have supported <u>charges</u> for another felony. <u>See</u> <u>United States v. Kenney</u>, 283 F.3d 934, 938 (8th Cir. 2002); <u>United States v. Armstead</u>, 114 F.3d 504, 513 (5th Cir. 1997).   Their primary argument is that courts have interpreted the armed-career-criminal provision of the Guidelines, which applies if the defendant "used or possessed the firearm ... in connection with either a crime of violence ... or a controlled substance offense," U.S.S.G. § 4B1.4(b)(3)(A), to allow a burglary during which the gun was stolen to count as the other felony. <u>Armstead</u>, 114 F.3d at 512-13.  However, the armed-career-criminal provision does not contain the word "another," and the majority's interpretation of subsection (b)(5) turns entirely on the presence of that word.  Moreover, the cases construing the armed-career-criminal provision

13

turned on the interpretation of "in connection with," see e.g., Smith v. United States, 508 U.S. 223 (1993), so they shed no light on how a court should construe "another felony offense."[6]  Thus, the Fifth and Eighth Circuits dismiss the majority's interpretation of "another felony offense" without ever addressing the heart of that interpretation and offer no persuasive arguments in support of their interpretation.

In contrast, the Fourth Circuit acknowledges that the majority's view of "another felony offense" is a reasonable interpretation, but maintains that the majority view is not the best interpretation, preferring an element-based understanding of "another felony

_____

6.  The Fifth and Eighth Circuits also argue that nothing in the Guidelines prohibits enhancements from applying to contemporaneous conduct.  While true, this argument misapprehends the majority's position. Subsection (b)(5) is the only enhancement that uses the word "another" to determine whether it should apply.  The majority is not suggesting that enhancements cannot apply to contemporaneous conduct, but rather, under their interpretation of "another felony offense," this particular enhancement cannot apply to conduct non-distinct from that supporting the crime of conviction.

14

offense" borrowed from <u>Blockburger v. United States</u>, 284
U.S. 299 (1932).[7]  <u>Blount</u>, 337 F.3d at 407-08.  Although
the Fourth Circuit acknowledges that the Supreme Court
has not applied <u>Blockburger</u> outside the constitutional
context and that nothing in the Guidelines mandates its
use, it suggests that Application Note 4 of § 2K2.1,
which defines "felony offense" as "any offense (federal,
state, or local) punishable by imprisonment for a term
exceeding one year, whether or not a criminal charge was
brought, or conviction obtained," supports an element-
based meaning of "felony offense" in subsection (b)(5).
<u>Id</u>. at 407.

According to the Fourth Circuit, this definition
"necessarily focuses on the elements of the 'felony
offense,' as there is no way to determine whether conduct
is 'punishable by imprisonment for a term exceeding one

---

7.  <u>Blockburger</u> held that "where the same act or
transaction constitutes a violation of two distinct
statutory provisions, the test to be applied to determine
whether there are two offenses or only one, is whether
each provision requires proof of a fact which the other
does not."  284 U.S. at 304.

year' except by ascertaining that such conduct satisfies
the elements of a particular crime." <u>Blount</u>, 337 F.3d at
407.   The court concluded that looking at <u>elements</u> to
determine if there is an enhancing offense while defining
the charged offense based on <u>conduct</u> would result in
"asymmetry," which is inappropriate because "another"
means "an additional one of the same kind."   <u>Id</u>. (citing
Webster's Third New Int'l Dictionary 89 (1981)).[8]

However, this argument is not without its
shortcomings.   Although it is clear that the meaning of
"offense" in subsection (b)(5) (as used in "another
felony offense") is distinct from the general meaning of
"offense" throughout the Guidelines (which includes
relevant conduct), the meaning of "offense" in subsection
(a)(4)(A), which defines the base-level offense, is still

---

8.   The court acknowledged that the definition of
"offense" used throughout the Guidelines is the "offense
of conviction and all relevant conduct ... unless a
different meaning is specific or is otherwise clear from
the context."   U.S.S.G. § 1B1.1 cmt n.1(k).   However, it
found that another meaning was clear from the context
here.   <u>Blount</u>, 337 F.3d at 407 n.2.

governed by the general definition.  Reading "felony offense" in subsection (b)(5) to mean something different from "offense" in subsection (a)(4)(A) would actually present an "asymmetry" because the court would have to find that the same conduct supports two offenses, but each offense is defined using a different legal standard in the same Guideline, § 2K2.1. Thus, the two "offenses" would not be "of the same kind."  Webster's Third New Int'l Dictionary 89 (1981).  Although the Fourth Circuit's reading of this application note raises an interesting semantic point, it cuts both ways and does not provide decisive insight into the meaning of "another." Nonetheless, the Fourth Circuit has certainly adopted a reasonable interpretation of subsection (b)(5).

The court is then faced with two seemingly reasonable interpretations of "another felony offense," the majority view and the Fourth Circuit's, each of which finds some support in the overall structure or specific provisions of the Guidelines.  Nonetheless, the court is troubled by

17

the majority's view because the subsection (b)(5)
enhancement would not apply even if the defendant evinced
a willingness to use the gun after it is stolen, as long
as he does not actually use it.   In general, the
Commission intends to punish all distinct aspects of a
crime that pose a danger or harm to society, and
subsection (b)(5) was intended to enhance sentences based
on the danger of having a firearm while committing
another felony.   Blount, 337 F.3d at 406.  The majority's
interpretation of "another felony offense," however,
prevents the subsection (b)(5) enhancements from applying
in gun possession prosecutions, even though that risk is
not accounted for in the base-offense level.  The court
can see no solution to this problem, except for the
Commission to revise the Guidelines to clarify whether it
intends the enhancement to apply to burglaries during
which the possessed gun is stolen.[9]

_____

9.   The court notes that this would be the result of
applying the rule of lenity.   Thus, the majority's
position is essentially posited on that rule.

18

Likewise, although the court finds the Fourth Circuit's approach reasonable and intellectually appealing, that approach also has a problem. Section 2K2.1 of the Sentencing Guidelines governs a slew of gun offenses ranging from gun transfers, <u>see</u> <u>e.g.</u>, 18 U.S.C. § 922(a), gun theft, <u>see</u> 18 U.S.C. § 922(u), and gun possession, <u>see</u> <u>e.g.</u>, 18 U.S.C. § 922(g)(1). <u>See</u> U.S.S.G. Appendix A. The problem with the Fourth Circuit's approach arises when considering the application of the subsection (b)(5) enhancement in gun-theft cases prosecuted under 18 U.S.C. § 922(u) (making it a federal crime to steal firearms or ammunition from a licensed gun dealer).[10] A defendant who is charged

_____

10. The court recognizes that this case involves a prosecution under 18 U.S.C. § 922(g)(1), and not for gun theft under 18 U.S.C. § 922(u). Some might suggest this concern is therefore irrelevant to the present case. However, in deciding this case, the court must construe a term in the Guidelines; as such, it is necessary to look at possible consequences of the construction in other types of cases to determine whether a given construction is reasonable. Because the same provision and enhancement apply to possession and gun-theft crimes alike, the interplay of the enhancement with the base-
(continued...)

under § 922(u) will necessarily commit either a burglary or a theft, which are felonies under state law.   In general, the elements of burglary are (1) unlawfully entering the dwelling place of another; (2) with the intent to commit a felony.   The elements of 18 U.S.C. § 922(u) are (1) taking of; (2) a firearm; (3) that has been shipped in interstate commerce; (4) with intent to permanently deprive the owner of the firearm; (5) where such taking occurs from the person or premises of a licenced gun dealer.   Each offense clearly requires proof "of a fact which the other does not," Blockburger, 284 U.S. at 304.   Likewise, the elements of felony theft

---

10. (...continued)
level offense will shed light on the reasonableness of the interpretation of "another."

Moreover, the court is simply employing a method of construction that the Fourth Circuit itself used.   It demonstrated the flaws of the majority rule through an example where a person who takes a gun to a burglary and holds it near at hand throughout the burglary would receive the enhancement while a person who stole the gun at the outset of the burglary and kept it near at hand would not, even though both created the same danger. Blount, 337 F.3d at 410.

generally are (1) taking of property; (2) of a certain value; (3) with intent to permanently deprive the owner of it.  Because most felony theft statutes require a minimum monetary amount, see United States v. English, 329 F.3d 615, 618-19 (8th Cir. 2003), and the federal gun-theft crime requires the property to be a firearm and the taking to be from a firearm dealer, each offense requires proof "of a fact which the other does not," Blockburger, 284 U.S. at 304.  Thus, the elements of the federal gun-theft offense differ from the elements of the state felonies, and, under the Fourth Circuit's interpretation of "another felony offense," the enhancement would always apply in such cases.

However, as even the Eighth Circuit acknowledged, see Kenney, 283 F.3d at 938 n.3, enhancing a § 922(u) conviction under subsection (b)(5), based on the burglary or theft during which the guns were stolen, would constitute impermissible double counting because both

crimes are punishing the same thing: stealing guns.[11]
Thus, to adopt the Fourth Circuit's interpretation of
"another felony offense," the court would have to hold
that the Commission intended a cumulative enhancement
that is impermissible double counting.  This is hard to
accept because the Commission showed the foresight to
explicitly exclude from cumulative application another
enhancement that would clearly be impermissible double
counting.  See U.S.S.G. § 2K2.1 cmt n.9 (preventing

---

11. It is possible to argue that the base offense and
the enhancement punish distinct harms because stealing
guns is bad and having a gun while being involved in
theft is bad.  But this argument is somewhat circular:
whenever a gun is stolen, the perpetrator will have a gun
while committing a theft.  Essentially, the harm of
possessing a gun while committing a theft is included in
the base-offense level for gun theft because every time
a person commits that crime, they must possess a gun.

As the Fourth Circuit conceded, enhancements are
intended to apply to only certain instances of the crime
supporting the base-offense level, not every iteration of
that instant offense.  See Blount, 337 F.3d at 406
(noting the subsection (b)(5) punishes additional harm
beyond that punished in § 2K2.1 firearms offenses).  Put
another way, if the harm contemplated by an enhancement
is present whenever the base-level offense is committed,
the enhancement is not really an enhancement and is
redundant.

application of subsection (b)(4) enhancement for possessing stolen firearm if person is sentenced for crime involving a stolen firearm).

The court therefore faces a dilemma: To adopt the majority's interpretation of "another felony offense," the court would have to conclude that the Commission did not intend to punish the potential harm of possessing a gun during a burglary in gun-possession cases; but, to adopt the Fourth Circuit's interpretation of "another felony offense," the court would have to conclude that the Commission wanted to allow impermissible double counting in gun-theft cases prosecuted under § 922(u). Neither result is entirely satisfactory.

However, another aspect of the Fourth Circuit's approach, namely its interpretation of "in connection with," corrects the flaw with its interpretation of "another felony offense." A defendant must actively use the gun or keep it close at hand during the burglary in order for the gun possession to be considered "in

23

connection with" the other felony; mere possession is not enough.  Blount, 337 F.3d at 411.  This eliminates any concern of double counting in 922(u) cases because the subsection (b)(5) enhancement applies only if the defendant's conduct, by evincing an intent to use the gun, poses a greater risk than the base-level offense of gun theft.  Because the Fourth Circuit's overall approach to subsection (b)(5) punishes the added risk of danger from possessing a gun during a burglary and prevents impermissible double counting in gun-theft cases, the court is inclined to follow the Fourth Circuit's lead.

One final matter gives the court pause.  Although the Eleventh Circuit has not decided whether mere possession of a firearm that was acquired during a burglary satisfies the "in connection with" nexus of subsection (b)(5), it has interpreted the term "in connection with" in other Guidelines provisions and given it a more expansive interpretation than the Fourth Circuit's, holding that mere possession, even absent any indication

24

of intent to use the firearm, is sufficient to satisfy
this nexus.  See e.g., United States v. Rodriguez-Matos,
188 F.3d 1300 (11th Cir. 1999) (construing U.S.S.G.
§ 2B5.1(b)(3)); United States v. Young, 115 F.3d 834
(11th Cir. 1997) (construing U.S.S.G. § 4B1.4(b)(3)(A)).[12]

     In Young, the Eleventh Circuit construed "in
connection with" in U.S.S.G. § 4B1.4(b)(3)(A) and
concluded that "an armed career criminal possesses a
firearm in connection with a crime of violence when that
firearm is obtained during the commission of a burglary."
115 F.3d at 838.  In Rodriguez-Matos, which involved a
defendant who possessed a gun while selling counterfeit
money, the court adopted an expansive reading of "in
connection with" as used in § 2B5.1(b)(3) (which
addresses counterfeiting) because it was "unable to

_____

     12. In United States v. Whitfield, 50 F.3d 947 (11th
Cir. 1995), the court was presented with the exact
question presented in this case, but declined to decide
the meaning of "in connection with" because the defendant
pointed the gun at the officers who interrupted a second
burglary.  Id. at 949.  The court explained that under
either standard he used the gun "in connection with" the
second burglary.

discern any principled reason why [it] should follow a path of reasoning different from that marked by [the] decision in <u>Young</u>, when attempting to arrive at the construction that should be accorded the same 'in connection' phrase found in [a different provision]." 188 F.3d at 1308.

Although § 2K2.1(b)(5) also contains "in connection with," a principled reason exists to interpret it differently here: In contrast to § 2B5.1(b)(3) and § 4B1.4(b)(3)(A), § 2K2.1(b)(5) contains the word "another" before felony offense, which raises an interpretative dilemma, <u>see</u> discussion above, not present in the other provisions.[13]  Moreover, without a more restrictive interpretation of "in connection with," an element-based understanding of "another felony offense"

---

13. It is worth noting that the court in <u>Young</u> acknowledged that every circuit to interpret "in connection with" in § 2K2.1(b)(5) at that time concluded that it required more than mere possession.  115 F.3d at 838.  The court's only justification for not following <u>those</u> circuits was that <u>Young</u> involved armed career criminals and not a crime under § 2K2.1.  <u>Id</u>.

would allow impermissible double counting for § 922(u) prosecutions, a result which would call into question that interpretation's validity.

Because the quandary presented by the Fourth Circuit's interpretation of "another felony offense" is resolved when "in connection with" is interpreted to mean more than mere possession, and because the quandary presented by the majority's interpretation of "another felony offense" (that it does not punish a particular aspect of criminal conduct that poses a unique risk of harm) can be resolved only by making the Sentencing Commission clarify subsection (b)(5), the court finds the Fourth Circuit's interpretation more reasonable. The court therefore holds that the enhancement contained in U.S.S.G. § 2K2.1(b)(5) applies if the other felony offense is the burglary during which the weapon is stolen only if the defendant evinces some intent to use the firearm in connection with the burglary after stealing it, either by keeping it close at hand (e.g., putting it

in his waistband or holding the gun in his hand throughout the remainder of the burglary) or actively using it.

It is fair to ask if this rule adequately takes into account the Commission's goal in adopting the subsection (b)(5) enhancement. The court is satisfied that it does. The subsection (b)(5) enhancement was intended to punish the extra risk of harm that arises from possessing a gun during a felony. If a person breaks into a house and steals a gun but puts the gun in a bag with other stolen items, there is little added danger. This stands in stark contrast to the person who steals a gun and puts it in a waistband or holds it throughout the burglary. To be sure, merely possessing a gun can embolden a criminal to continue engaging in the criminal act, which creates an added danger. See United States v. Gainey, 111 F.3d 834, 837 (11th Cir. 1997). However, a criminal who breaks into a building, steals a gun, and then puts it out of reach with other stolen items is clearly not

relying on that gun as a weapon and will therefore hardly be emboldened by its presence to continue that burglary. In contrast, the criminal who obtains a gun during a burglary and keeps the weapon accessible may be emboldened to continue the burglary.  Thus, the court's interpretation of § 2K2.1(b)(5) gives effect to the Commission's intent to punish all distinct aspects of the criminal conduct while not authorizing an impermissible double punishment in § 922(u) cases.

All that remains is to apply this holding to the facts of this case.  The burglary is clearly "another felony offense" under the <u>Blockburger</u> test.  Because Terry kept the shotgun close at hand during the burglary and during his flight,[14] he used the shotgun "in connection with" the burglary.[15]    Therefore, the

---

14. The burglary offense continued throughout the time Terry was in the building and during his flight. <u>See</u> 1975 Ala. Code § 13A-7-5(a)(1).

15. The U.S.S.G. § 3C1.2 enhancement for reckless endangerment is not impermissible double counting because the subsection (b)(5) enhancement punishes his (continued...)

subsection (b)(5) enhancement applies here, and Terry's

third objection to the PSR will be overruled.

An appropriate order will be entered.

DONE, this the 28th day of March, 2006.


          /s/ Myron H. Thompson          
        UNITED STATES DISTRICT JUDGE

_____

        15. (...continued)
willingness to use the gun, evinced by keeping it close
at hand, while the reckless endangerment enhancement
punishes the fact that he leveled it at the officer and
the neighbor.